UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LIFE TIME FITNESS, INC. ET AL.,** | ) | **CASE NO.1:13CV566** |
| | ) | |
| Plaintiffs, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CHAGRIN VALLEY ENGINEERING, LTD.,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment of Defendant Chagrin Valley Engineering, Ltd. (ECF No. 28). For the following reasons, the Court GRANTS IN PART and DENIES IN PART.

**I. BACKGROUND**

On August 7, 2007, Plaintiff LTF Real Estate Company ("LTFR") entered into an engineering services contract with Defendant Chagrin Valley Engineering, Ltd. Under the terms of the contract, Chagrin agreed to prepare a design for a parking lot and to perform other various engineering services at LFTR's newly constructed fitness center located at 3850 Richmond Road, Beachwood, Ohio. Plaintiff FCA Construction Company, Ltd. ("FCA")

served as the general contractor for the parking lot project.  Both FCA and LTFR are wholly owned subsidiaries of Plaintiff Life Time Fitness, Inc ("Life Time").  Prior to entering into the Chagrin contract, LTFR hired H.C. Nutting to perform a geotechnical report on the subsurface conditions at the location of the proposed lot.  The Nutting report identified wet, soft soil conditions and recommended installation of an underground drainage system.  LTFR provided Chagrin with a copy of this report to be used during its design development.

On April 8, 2008, Chagrin completed the design of the parking lot, and the City of Beachwood approved the final site plans and specifications.  Parking lot construction was subsequently completed in November 2009.  Formal opening of the facility and the parking lot occurred on January 7, 2010.  Shortly after opening, the parking lot began to fail, with the surface pavement experiencing heaving, cracking and premature deterioration.  On March 15, 2013, Plaintiffs filed this action.  Each Plaintiff has asserted a negligence claim and LFTR has alleged a breach of contract claim.  Specifically, the three Plaintiffs allege professional negligence against Chagrin because of its failure "to design the parking lot in a manner which complied with the highest industry standards and in a manner demonstrating good professional skill and judgment."  (Compl. ¶ 30; ECF No. 1 at 8).  Plaintiffs also allege Chagrin's failure to follow the Nutting report recommendations contributed to the parking lot failure.  As a result of this alleged negligence, Plaintiffs claim that they have incurred "monetary damages in remediating the damage to the parking surface." (Compl. ¶32; ECF No. 1 at 9).  LTFR also alleges Chagrin breached numerous provisions of the contract that ultimately resulted in the parking lot's failure.

## II.  LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d

386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B. Negligence Claims

Each Plaintiff has asserted a professional negligence claim against Chagrin based on the alleged failure "to design the parking lot in a manner which complied with the highest industry standards and in a manner demonstrating good professional skill and judgment." (Compl. ¶ 30; ECF No. 1 at 8).  Plaintiffs claim Chagrin's negligent design caused them to suffer "monetary damages incurred in remediating the damage to the parking surface." (Compl. ¶32; ECF No. 1 at 9).  Chagrin responds to these allegations by declaring that the statute of limitations has expired on Plaintiffs' negligence claims.  Chagrin also argues that the economic loss rule bars Plaintiffs' recovery for purely economic damages.

#### 1. Statute of Limitations Bars Plaintiffs' Negligence Claims

The relevant statute of limitations for Plaintiffs' negligence claims is found in § 2305.09(D) of the Ohio Revised Code, which imposes a four year statute of limitations "for an injury to the rights of a plaintiff not arising on contract."  OHIO REV. CODE § 2305.09(D). Under this statute, plaintiffs generally have four years to bring a cause of action. *Id.*  The statutory period begins at the time the cause of action accrues. *Id.*  Thus, in order to correctly apply the statute of limitations, the Court must determine the time the aforementioned cause of action accrues.

Chagrin argues that the negligence claims accrue at the time the design was completed, which was on April 8, 2008.  Chagrin relies on the Ohio Supreme Court ruling that the "cause of action for professional negligence accrues when the act is committed." *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.,* 128 Ohio St.3d 529, 536 (2011).

Conversely, Plaintiffs argue that their negligence claims accrue at the time of injury. Under this "delayed-damages" rule, "the statute of limitation as to torts does not usually begin to run until the tort is complete." *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St. 3d 79, 81 (1982). Plaintiffs suggest that the delayed-damages rule should govern since they were not injured until the parking lot failed in January 2010. Since these two theories are at odds, the Court must determine which of these rules applies.

Ultimately, the determination rests on whether Ohio law recognizes the delayed-damages rule for professional negligence cases. The delayed-damages rule states that "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St. 2d 376, 379 (1982). That is, all of the elements of the tort must be satisfied before the cause of action accrues. Under this rule, the statute of limitations would have extended until January 2014. Yet, the Ohio Supreme Court has expressly rejected this rule. *Flagstar*, 128 Ohio St. 3d at 535-36.

Under current Ohio law, the statute of limitations for a professional negligence claim begins to run at the time the negligent act is completed. *Id.* In *Flagstar*, the Ohio Supreme Court examined whether the discovery and delayed-damages rules applied in the professional negligence setting involving an appraiser. *Id.* at 533-34. After analyzing the case law supporting both theories, the Court reaffirmed its previous ruling that an "action for professional negligence accrues when the act is committed." *Id.* at 535 (citing *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176 (1989)). The Court also expressly noted that it had already rejected the delayed-damages rule in a prior case. *Id.* at 535. ("We implicitly rejected the

5

delayed-damages rule in *Grant Thornton*.").

While *Flagstar* and *Investors REIT One* dealt with accountants and appraisers, there is no reason to limit the Court's ruling to those professions. In fact, at least one court in Ohio has already applied the holding of *Investors REIT One* to a professional negligence claim involving an engineer. *See Scott Hutchinson Enters, Inc., et al. v. Rhodes, Inc., et al*, 2005 WL 2000661 (S.D. Ohio 2005). In *Scott Hutchinson*, the plaintiff alleged professional negligence against the defendant based on its performance of a technical investigation, consultation and engineering services. *Id.* In applying the *Investors REIT One* rule, the Court noted that:

> "[s]everal Ohio courts have extended the reasoning of *Reit One* to claims of professional negligence by individuals other than accountants and have rejected the argument that no actionable injury can be held to have occurred so as to set in motion the running of the statute of limitations until damage has resulted from the negligent act."

*Id.* at *5. Similarly, Plaintiffs in this case claim Chagrin was negligent in performing engineering services. The Court finds that the *Investors REIT One* and *Flagstar* rulings apply to the facts of this case. Accordingly, claims for professional negligence against engineers for design services accrue at the time the alleged negligent act was complete. Consequently, the cause of action accrues at the time the engineering design was complete.

Plaintiffs do not dispute that they accepted the design, or that the City of Beachwood approved the design. Further, they do not dispute that Chagrin completed the design on April 8, 2008. Since there are no other material facts in dispute regarding the completion date, the Court finds that the claims accrued on April 8, 2008. Thus, the Plaintiffs had until April 8, 2012 to bring the cause of action. Plaintiffs failed to file until March 15, 2013, and are now

barred from bringing their claims for professional negligence. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment on all negligence claims.

### 2. Economic Loss Rule Bars Plaintiffs' Claims

Plaintiffs' negligence claims are also barred by the "economic loss" rule since they allege only "monetary damages incurred in remediating the damage to the parking surface." (Compl. ¶32; ECF No. 1 at 9). Under the economic loss rule, plaintiffs are barred from recovering in tort for purely economic damages. *Corporex Dev. & Constr. Mgmt, Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414 (2005). "This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Id.* at 414 (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 42 (1989)). Accordingly, courts recognize that these types of economic losses are more suitably addressed by contract law. *Corporex*, 106 Ohio St.3d at 414. Thus, parties should only be held to account for those damages that were contemplated at the time of the agreement. *Id.* at 415. ("Protection against economic losses caused by another's failure properly to perform is but one provision the contractor may require in striking his bargain."). Here, the parties do not dispute that the alleged damages are purely economic. Further, while some exceptions exist that may allow a party to circumvent the traditional economic loss rule, none apply to this case.

Plaintiffs first allege that an independent legal duty existed outside of the contract that allows it to recover these economic damages. The crux of Plaintiffs' argument is that design professionals have a duty "to exercise reasonable care in the preparation of the design."

7

*Cincy Riverfront Coliseum v. McNulty Co.*, 28 Ohio St. 3d 333, 337 (1986).  In *Riverfront*, the project owner sued one of the subcontractors for its negligent design of a walkway.  *Id.* at 334 (syllabus).  The court recognized an independent duty existed which held the subcontractor liable for the "foreseeable consequences of a failure to exercise reasonable care in the preparation of the design."  *Id.* at 337.

In this case, however, even if the Court found Chagrin owed a similar duty to LTFR as basis for recovery in tort, the economic loss rule would still bar recovery.  Under Ohio law, "[w]here the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of the contract."  *Ineos USA LLC v. Furmanite Am., Inc.*, 2014 WL 5803042, at *6 (Ohio Ct. App. 3d Dist. Nov. 10, 2014).  Yet, LTFR alleges the exact same damages for both its negligence and breach of contract claims–the monetary damages from remediation.  Further, where "there is sophisticated parties and plaintiffs seek recovery for economic loss alone, plaintiffs are limited to such remedies that are available under contract law."  *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 60 (S.D. Ohio 1986).  Thus, LFTR must rely on its contract and is barred from recovering in negligence for its economic losses.

Next, Plaintiffs argue that Chagrin owed FCA and Life Time an independent duty and that there is a sufficient nexus to substitute for privity that allows tort recovery for the economic losses.  Again, Plaintiffs arguments are unavailing.  Generally, where there is no privity, a plaintiff cannot recover in tort for "economic damages against design professionals involved in drafting plans and specifications."  *Floor Craft Floor Covering, Inc. V. Parma Comm. General Hosp. Ass'n*, 54 Ohio St. 3d 1, 8 (1990).  Even where privity or an

8

appropriate substitute exists, it "may impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more." *Corporex,* 106 Ohio St. 3d at 415. Therefore, even with substituted privity, the Plaintiffs would be bound to recover only for injuries contemplated by the original agreement. In light of the existing contract and Plaintiffs' corporate structure as a "single enterprise," they are bound to the agreed terms and are not permitted to seek a remedy in tort. Since the economic loss rule prohibits Plaintiffs from obtaining the monetary damages in tort, all of Plaintiffs' negligence claims are dismissed. Consequently, FCA and Life Time are dismissed from the case since their claims are dismissed.

### C.) Breach of Contract Claims

Lastly, LTFR brings a breach of contract claim against Chagrin, alleging a number of specific breaches including:

> ...failing to address the issues at the parking lot site relating to excessive groundwater and drainage. Chagrin failed to adequately identify site development issues, specifically the parking lot drainage issue, at the Project. Chagrin failed to follow the recommendation in the Nutting Report and failed to design the parking lot to include underdrains or any other drainage system to adequately handle the excessive soil moisture and ground water present at the site. Chagrin failed to properly design site grading, paving and drainage as required by its contract with Plaintiff LTFR. Finally, Chagrin breached its contractual obligation to use the highest industry standards and good professional skill and judgment in performing its engineering work on this Project.

(Complaint at ¶ 26).

In an attempt to show LFTR has simply recast its negligence claim as a contract claim, Chagrin focuses solely on LTFR's allegation of a failure to "use high industry standards and good professional skill and judgment." (ECF No. 29 at 10-12). While this term incorporates

the design professional's duty in tort, Defendant cites no law prohibiting parties from incorporating such a requirement into a contract.  By contractually agreeing to perform its work using "high professional standards and good professional skill and judgment," Defendant subjected itself to a breach of contract claim for failure to live up to this standard, whatever it may be.   Neither party offers a definition of the standard or what "good professional skill and judgment" means in this context.  The Court finds the phrase ambiguous, requiring expert testimony.  This alone mandates denying summary judgment.

In its opposition brief, LTFR points to various contract provisions it contends were breached and identifies testimony, including expert testimony, that supports its allegations in the record that may support their breach claim.  (ECF No. 32 at 19-21).  Chagrin refutes these allegations by highlighting other contrary evidence in the record.  (ECF No. 36 at 11-14). These issues of fact are material to the resolution of the contract claim.  Since material facts are still in dispute regarding the contract provisions and potential breaches, the Court DENIES summary judgment on the breach of contract claim.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiffs' negligence claims and DENIES the Motion on LTFR's breach of contract claim.  Accordingly, Plaintiffs FCA and Life Time are dismissed from the case since they have no remaining claims.

In light of the above ruling, the parties are ordered to confer and submit agreed proposed dates for a settlement conference to be held the week of December 15, 2014.  The parties are further ordered to submit proposed jury instructions on the terms "high industry

standards" and "good professional skill and judgment."  The parties shall submit their proposed settlement conference dates and jury instructions no later than Monday December 8, 2014.

    IT IS SO ORDERED.

                                  s/ Christopher A. Boyko
                                  CHRISTOPHER A. BOYKO
                                  United States District Judge

Dated:  December 4, 2014